By the Court.—O’Gorman, J.
The essential facts as admitted by the demurrer are these:
Lemuel B. Clark collected a large sum of money, of which $10,000 belonged to the plaintiffs. He concealed from them that he had this money in his possession, and denied that he had it. Finally on demand being made on him that he should pay over to plaintiffs the $10,000 which belonged to them, he refused to pay, saying that he expected to be sued by them, and that, if he were sued, the case would never be settled or discontinued by his proposition. The day after making this threat, he agreed to pay the plaintiffs $8,500 *496 upon their assigning all their interest in the money, and provided also that the transactions were closed at once. The plaintiffs, knowing that said Clark was unscrupulous, and believing that he would use all such devices to delay them in the progress of any action they might bring against him, as unscrupulous debtors usually resort to, and bearing in mind that it would take time to recover a judgment against him, that they might not be able to collect the judgment, and that there was hazard of losing all of the money if it remained in possession of the said Clark, unwillingly executed and delivered to said Clark the assignment he required, and received from him $8,500.
On these facts, the plaintiffs demanded judgment that the assignment by them to said Clark be produced and declared void, and that the defendant pay them the .sum of $1,500 with interest and for such other relief as might be just, etc.
The defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action.
The court at special term overruled the demurrer on the ground that the act of plaintiffs in executing the assignment was without consideration, was not voluntary, but was compelled by the declaration of said Clark that if he were sued he would put the plaintiffs to the indefinite delay of an action; that the transfer was apparent and not real; and that plaintiffs were entitled to the money remaining unpaid; and also on the ground that, in equity, an agent or trustee cannot claim, as against his principal or cestui que trust, any advantage gained by him by an inequitable use of his power as trustee.
The question on this appeal is whether the decision of the court below is right.
First, as to the competency of the complaint itself. It is well settled that all reasonable intendments will be indulged in support of the pleading demurred to.
*497 From the allegations of the complaint here, it may be reasonably presumed that the plaintiffs intended to aver that, by reason of that declaration of the said Clark, and the serious danger of loss of the whole sum due to them threatened in case he carried his declaration into effect, the plaintiffs were forced against their will to agree to execute and to execute the release of their claim to said Clark, and to assent to his retaining $1,500, being their money to which he had no legal or equitable right whatever.
There is no room here for the argument that the transaction involved the compromise and settlement of a disputed claim. No allegation in the complaint, either directly or by necessary or natural inference, avers such a fact. There is no claim that said Clark had any right or title whatever to retain any part of the money of the plaintiffs which he unlawfully retained in his hands. All his course of dealing with the plaintiffs was hostile, deceptive, and fraudulent. He kept the fact that he held in his hands the plaintiffs’ money secret from them. He denied that he had it, and at last offered to pay, if they allowed him to retain $1,500, and threatened them with protracted litigation if they did not, at once, accept his terms, and they unwillingly yielded. All this is averred in the complaint and admitted by the demurrer.
The principles of law which seem applicable to such a case, are these : No contract is valid unless it have the voluntary assent of the parties to it. Harmony v. Bingham, 12 N. Y. 109. Where any unlawful influence exists which overrules and compels the will, such voluntary assent does not exist. The party thus overpowered has no free will. He stands in vinculis. He is not a. free agent, and not being equal to protect himself, a court of equity will protect him. A court of equity will protect against fraudulent advantage taken, and against imposition and oppression. 1 Story’s Eq. Jur. § 239. Equity will relieve, by setting aside an agreement, although there was no duress, when one of the parties *498 has taken advantage of the situation of the other and used undue influence to force an agreement upon him. 1 Chitty on Contracts, p. 273.
Among the influences capable of overpowering the will and depriving it of its .freedom of action, none is more potent than fear of bodily harm or peril, and that is commonly called “duress; ” and in England the use of the term “ duress ” was, and is perhaps still, applied to such species of fear. It is held there that the influence sufficient to avoid a contract must be such as to create a reasonable fear of death or mayhem, and that fear of battery or trespass on property is not sufficient. Skeate v. Beale, 11 Add. & Al. 983.
. In the United States, however, this rigid and narrow rule has been, to a great extent, relaxed.
In Foshay v. Ferguson, (5 Hill, 158,) it was held that a contract procured by threats of destruction of property would be avoided on the ground of duress.
In McPherson v. Cox, (86 N. Y. 478,) the action was on a bill of exchange, drawn by the master of a ship, which bill he signed, because the plaintiff would not clear his ship or allow her to proceed on her voyage unless he did sign it. Held, that to make the contract' unlawful, it was not necessary that the person of the master should have been arrested or his goods or his vessel seized. It was enough that the contract was entered into to procure the liberation of the vessel, and the execution might well be imputed to illegal restraint. The refusal of the plaintiff to allow the vessel to leave the port until the bill was signed did constitute duT6SS.
In Baldwin v. Liverpool &c. Co., (74 N. Y. 128,) the common carrier refused to deliver property to the consignee, unless he paid an additional sum, not provided for in the contract. The court of appeals, in its opinion, says : “ It is not disputed that if the defendant was not legally entitled to exact the £50 for the transporta *499 tion, the plaintiff-would be entitled to recover it back as having been paid under duress of goods.”
In Barry v. Equitable &c. Co., (59 N. Y. 592,) the assignment of a policy of insurance was obtained from the wife by undue influence of the husband. The court say: “ Where there exist coercion, threats, compulsion and undue influence, there is no volition. There is no, intention nor purpose, but to yield to the moral pressure for relief from it. A case is presented more analogous to a parting with property by robbery. No title is made through a possession thus acquired.” See also Scholey v. Mumford, 60 N. Y. 501; Stenton v. Jerome et al., 54 Ib. 485. ......... -
The principle underlying all these cases seems to be, that when injustice is perpetrated by means of improper and dishonest influences, so subduing the will of a party that it loses the power of resistance, the law will interpose in protection of the party thus imposed upon, either by refusing its aid to the wrong-doer, or by defeating and undoing the wrong and restoring to the' injured party what he has been deprived of.
The case at bar is, in its essential facts, similar to the cases cited above. In those cases, there was no threat or peril of bodily hurt or harm. Here also, as in those cases, there was threat and peril of pecuniary loss, to prevent which loss the will was controlled and forced into the act, from the disastrous consequences of which relief is sought.
As the case at bar is now presented, the plaintiff may receive in this action any relief and in any form to which on the facts admitted he may be entitled, whether that form be legal or equitable. Here, as in the cases above cited, the defendant’s testator, said Clark, held the plaintiffs at a great disadvantage, and he took the most effective means to make that advantage oppressive. Here, as in these cases, the fear of loss of money- or property, unless the disastrous condition were accepted, caused the unwilling submission.
*500 The authorities cited by the learned counsel for the defendant have been examined, but do not seem to be in accord with the controlling decisions of the court of appeals of this state.
The judgment appealed from should be affirmed, but with leave to appellant to withdraw the demurrer and answer, on payment of costs within twenty days.
Freedman, J., concurred.